**William HUNTLEY, Lorna Huntley and Julie C. Marine Fisheries, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 3–83C.

United States Claims Court.

Dec. 7, 1983.

Z. Hershel Smith, Providence, R.I., for plaintiffs.

M. Susan Burnett, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

OPINION

WIESE, Judge:

This case comes before the court on defendant's motion to dismiss and plaintiffs' opposition thereto. Following consideration of the parties' briefs, supplemented by oral argument, the court entered a bench decision in defendant's favor. The reasons for that decision are restated herein.

I.

Plaintiffs seek damages for breach of contract. Their complaint recites that they contracted for the building of a fishing vessel through Branton Yachts Corporation, a company which, at the time, was on the verge of defaulting on a loan guaranteed by the Small Business Administration. This contract, they say, was central to an SBA-promoted arrangement involving that agency's side-by-side guarantees of (i) a bank loan to plaintiffs for the purchase price of the vessel, and (ii) a refinancing package for Branton that included a further extension of credit to that company.

The vessel was not built on schedule nor, apparently, in accordance with its specifications and plaintiffs claim to have suffered injury because of this. They now sue the United States for breach of contractual and fiduciary duties. Plaintiffs allege that they were induced to contract with Branton in the first instance because of representations and warranties made by the SBA with respect to the company's ability to perform the work and also because of the further assurance of a performance bond which the SBA had undertaken to secure and to guarantee. Additionally, they contend that at a point when Branton's performance became doubtful (sometime after work had commenced), the SBA encouraged continuance of the relationship by promising that it would make certain that the company fulfilled its obligations under the contract, *i.e.*, that the boat would be properly constructed. It is asserted that the SBA, though called upon to do so, never honored this commitment.

While it is claimed that the "practical effect" of the financing arrangement was to relieve SBA from its bad loan situation with Branton, there are no facts which demonstrate that plaintiffs' contract with Branton was undertaken as part of an agreement with, or in satisfaction of any loan condition imposed by the SBA. The prima facie factual elements of a contract—offer, acceptance, consideration—are conspicuously absent from the complaint.

Plaintiffs assert here precisely the same facts which they alleged in a state court action brought against several joined defendants including the Small Business Administration. In that suit, which was later removed to the federal district court, *Huntley v. American Druggists' Ins. Co.,* 551 F.Supp. 482 (D.R.I.1982), they sought recovery against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 (1976 & Supp. V 1981), pursuant to the principle that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other * * * " under certain circumstances. Restatement (Second) of Torts § 323 (1965). In support of their position, they relied upon the decision in *Neal v. Bergland,* 646 F.2d 1178 (6th Cir.1981), *aff'd sub nom., Block v. Neal,* —— U.S. ——, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), a case holding essentially that injury suffered by a borrower's reliance upon a negligently performed home construction inspection by the Farmers Home Administration amounted to an actionable tort under the Tort Claims Act.

The United States moved to dismiss the district court action on the ground that plaintiffs had failed to state a claim for which relief could be granted. Specifically, the Government's contention was that, in reality, plaintiffs' grievance was based upon misrepresentation rather than the breach of any independent duty; therefore, their suit against SBA was barred by the immunity against such actions that was preserved under the claim exceptions stated in 28 U.S.C. § 2680(h) (1976).

The district court agreed with the Government's contention. Notwithstanding what it took to be a contrary holding in the *Bergland* decision, the district court decided that: "even if it is assumed that the SBA voluntarily undertook the duty of ensuring that Branton Yachts would comply with the terms of its contract with the plaintiffs, the SBA's negligent performance of this duty involves injury resulting from a commercial decision taken in reliance on a governmental misrepresentation" rather than "from the negligent performance of an operational task." 551 F.Supp. at 486. Plaintiffs' injury, in other words, stemmed from the Government's failure to use due care in its spoken words rather than from a failure to properly perform some other duty. To the district court, therefore, the claim was one of "misrepresentation, not negligence." 551 F.Supp. at 486.

The court went on to say, however, that even accepting the applicability of the *Bergland* decision to the case at hand, still the plaintiffs' claim against the SBA would fail because they had not established a prima facie negligence claim. "The facts alleged by the plaintiffs", said the court, "simply do not support their claim that the SBA did in fact undertake the duty to see to it that Branton Yachts carried out its obligations under the contract." 551 F.Supp. at 486 n. 1.

The district court held, then, as a matter of law as well as of fact, that plaintiffs failed to state an actionable claim against the United States.

Consistent with its decision, the district court entered an order on December 1, 1982, granting the Government's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The order recited, *inter alia:* "Said motion to dismiss is granted and the case is dismissed, with prejudice, as to the Small Business Administration * * *." *Huntley v. American Druggists' Insurance Co.,* No. 82–0024P (D.R.I. Dec. 1, 1982) (order granting motion to dismiss). No appeal was taken.

## II.

In the present action, the Government moves once again for the dismissal of plaintiffs' suit arguing (i) that the complaint may not be considered because relief here is barred—as the Government phrases it—"by the doctrines of res judicata and collateral estoppel", and (ii) that even if it were to be examined on its merits, the complaint would have to be dismissed for failure to state a claim upon which relief can be granted because it fails to demonstrate those minimal facts necessary to the existence of either an express contract or one implied-in-fact. Though the Government is right on both points, we limit discussion here to the first.

## A.

The historical rule of res judicata (or what is today more often referred to as "claim preclusion") provides that "when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876). The purpose of the rule is to prevent relitigation between the same parties of matters actually litigated and decided as well as those that should have been. Accordingly, since the instant action involves the same parties as well as the same facts that were before the district court—only the theory of recovery is different here—further proceedings on the claim would ordinarily be barred.

Full preclusion is applicable, however, only so long as the relief being sought in the second action could have been secured in the first. Such was not the situation in plaintiffs' case. Though plaintiffs might have pursued their contract action in the district court, any recovery there would have been subject to the dollar restrictions ($10,000) applicable to actions brought against the United States in the district court under the Tucker Act, 28 U.S.C. § 1346(a), 1491 (Supp. IV 1980), *as amended by* Act of April 2, 1982, Pub.L. No. 97–164, 96 Stat. 39. Accordingly, to insure in these circumstances that a fair opportunity to litigate not be sacrificed, the rules of preclusion are more narrowly drawn: though proceeding on the same facts, a successive action seeking a different remedy is not barred. Restatement (Second) of Judgments §§ 25 comment *f,* 26(1)(c) (1982).

But, this exception notwithstanding, plaintiffs do remain bound to those matters which were actually litigated and determined in the first proceeding. In the words of the Restatement, "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982).

Thus, under this rule of "issue preclusion" (formerly referred to as "collateral estoppel") the problem that confronts the plaintiffs is the district court's determination that their complaint failed to recite facts sufficient to support the duty which they alleged the SBA had undertaken and not fulfilled. Since the facts we have before us are precisely the same as those considered by the district court, it is difficult to see how a claim for breach of contract can survive a prior determination that there was never a duty undertaken—either gratuitously or for a consideration.

In an effort to avoid the preclusive effects of the prior judgment, plaintiffs say that the earlier suit resulted in a dismissal for lack of jurisdiction and therefore no binding effect should follow from it. They also say that the district court viewed the facts in a tort context and hence, this court has the right to assess the same facts again to see whether they fulfill the contract contentions which plaintiffs are alleging here.

Plaintiffs are wrong on both arguments. First, with respect to the contention that jurisdiction of the district court was defeated by the failure of the complaint to assert a cognizable claim, the law is clearly the other way. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), offers language squarely on point: "[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." *Accord Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 71, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974). The holding of the district court was that plaintiffs had not defined a cognizable claim; not that the subject matter of their suit went beyond the court's power to hear. The decision against them was therefore "on the merits".

Plaintiffs' other point is equally unavailing to overcome issue preclusion. As was noted, the district court had found the facts alleged insufficient to support a prima facie claim of negligence because they failed to show any assumption of duty by SBA with respect to the supervision of Branton's contract performance. This holding, though it speaks only to duty in a tort context, is nevertheless determinative of plaintiffs' contract claim as well. A suit for breach of contractual duties owed cannot logically succeed on the same operative facts that have been judged to exhibit no assumption of duty at all. To put it another way, any favorable findings for plaintiffs by this court would be squarely inconsistent with the district court's view of the legal sufficiency of plaintiffs' complaint. Issue preclusion serves to foreclose the possibility of just such inconsistencies.

A final matter, not raised by either side, requires mentioning here. There is authority for the proposition that a decision which rests on alternative grounds (as the district court's decision does) does not preclude subsequent litigation on either ground standing alone. Restatement (Second) of Judgments § 27 comment *i* (1982). The Restatement cites two main reasons for this rule. The first is that the alternative ground is in a sense non-essential to the outcome and therefore may not have been as carefully considered as the primary ground stated. The alternative ground would therefore possess what the Restatement describes as "some of the characteristics of dicta." *Id.* To this concern, there is added a second: in many of these cases the losing party would be unlikely to seek an appeal because of the likelihood that the decision would be upheld on at least one of the alternative grounds. Consequently, if preclusion could be avoided only by pursuing appeal, the rule would be responsible either for promoting litigation (in the form of frivolous appeals) or, absent an appeal, for freezing in place potentially bad law.

The Restatement's view, as well as that of the Second Circuit in *Halpern v. Schwartz,* 426 F.2d 102 (2d Cir.1970), upon which the Restatement's reasoning relies, has not been universally endorsed. The Second Circuit itself has treated *Halpern* as limited to bankruptcy proceedings. *Winters v. Lavine,* 574 F.2d 46, 67 (2d Cir.1978). Other courts have similarly declined to follow the *Halpern* rule while not expressly disapproving it. *See e.g. Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1194 (D.C.Cir. 1983); *In Re Westgate-California Corp.,* 642 F.2d 1174, 1176–77 (9th Cir.1981); *Tanker Hygrade No. 18, Inc. v. United States,* 208 Ct.Cl. 488, 496–98, 526 F.2d 805, 809–10, *cert. denied,* 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976); *Stebbins v. Keystone Insurance Co.,* 481 F.2d 501, 507–08 (D.C. Cir.1973).

Here too we decline to follow that rule though in doing so we mean to address only the case at hand and intend no definitive position with respect to the application of the rule in some future case.

In the court's view the alternative determination of the district court—that plaintiffs' complaint failed to allege facts sufficient to establish the duty claimed owed—was not a casually drawn statement or one added simply to lend the decision additional persuasive weight. For one thing, a studied evaluation of the facts was as essential a part of the court's first determination as of its second. This is apparent from the court's initial holding that the complaint, even if true, showed no actionable wrong since what it described was not an injury arising out of the mal-performance of an operational task (*i.e.,* duty). From that point it involved no more than a shift in emphasis for the court to extend this determination to embrace the further conclusion (here the district court's alternative holding) that, in fact, the complaint recited no breach of duty at all.

Beyond this shared identity in thought process, a further reason for according conclusive effect to each of the district court determinations is that neither could be called unnecessary to the result. Whether one agrees or not with the district court's reading of the *Bergland* decision, the fact of the matter is that that court saw itself as taking a position on the law contrary to the appellate court's decision in *Bergland.* Given that circumstance, it would scarcely make sense to now indulge in the speculation that the district court may have given less rigorous consideration to its alternative holding because of the confidence attendant to its first determination. If anything, a determination drawn in the face of an opposing appellate court opinion, would only heighten the need for an additional and more certain basis for disposition of the suit. For these two reasons then, we view the district court's alternative holdings as offering no ground for denying issue preclusion.

## CONCLUSION

For the reasons stated, defendant's motion to dismiss is granted. It is ordered that the complaint be dismissed.